**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2464-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.R.,[1]

     Defendant-Appellant.

_____

Submitted February 24, 2026 – Decided July 10, 2026

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 10-09-1556.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Wayne Mello, Hudson County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials to protect the privacy of the victim. See R. 1:38-3(c)(9), (12).

PER CURIAM

Defendant J.R. appeals the denial of his post-conviction relief (PCR) petition alleging ineffective assistance of counsel following an evidentiary hearing. We affirm.

I.

We need not repeat the facts and procedural history leading to defendant's convictions — first-degree aggravated sexual assault, second-degree endangering the welfare of a child, second-degree sexual assault, and fourth-degree child abuse — nor the aggregate eighteen-year prison term, subject to an eighty-five percent parole disqualifier under N.J.S.A. 2C:43–7.2. The offenses arose from defendant sexually assaulting his step-granddaughter, N.R., when she was between ten and twelve years old. Because the parties are familiar with this matter, we incorporate by reference the extensive procedural history and facts set forth in prior unpublished and published decisions of our court and the Supreme Court. See State v. J.R., No. A-6236-12 (App. Div. Sept. 29, 2015) (J.R. I) (slip op. at 27-29) (reversing defendant's conviction and remanding for a new trial; reasoning that Lynn Taska, Ph.D.'s expert testimony about Child Sexual Abuse Accommodation Syndrome (CSAAS) exceeded the boundaries of permissible CSAAS testimony, among other things); State v. J.R., 227 N.J. 393,

A-2464-23

417-18 (2017) (J.R. II) (reversing this court's decision and remanding to this court for additional issues; reasoning that although Dr. Taska's testimony exceeded the proper parameters of CSAAS testimony, it did not deprive defendant of a fair trial); State v. J.R., No. A-6236-12 (App. Div. Aug. 29, 2017) (J.R. III) (affirming defendant's conviction and sentence), certif. denied, 232 N.J. 305 (2018); State v. J.R., No. A-4915-18 (App. Div. July 1, 2021) (J.R. IV) (slip op. at 7) (affirming the PCR judge's denial of defendant's PCR petition without an evidentiary hearing); State v. N.J., 250 N.J. 389 (2022) (J.R. V) (summarily remanding the matter for an evidentiary hearing). Therefore, we limit our recitation to the issues raised in this appeal.

After defendant's conviction and sentence were upheld, J.R. III slip op. at 15, and his PCR petition was remanded for an evidentiary hearing, J.R. V, 250 N.J. 389, a different PCR judge held evidentiary hearings and arguments over the course of five diverse dates.

The evidentiary hearing focused on defendant's claim that he was denied effective assistance of counsel due to trial counsel's hearing difficulties. Testimony was provided by trial counsel; Jeffrey Garrigan, sentencing and appellate counsel; Joseph Russo, trial counsel's supervisor at the Office of Public Defender (OPD); and Paul Ibsen, an OPD investigator.

3

Russo, employed at the OPD for nearly eighteen years and who supervised twenty-eight attorneys—including trial counsel—when this matter was tried, testified that he recalled observing N.R.'s trial testimony, defendant's testimony, and closing arguments. Russo recalled meeting with trial counsel after two meetings with the trial judge, who informed him that she had "serious concerns" regarding trial counsel's hearing on one day and noted that trial counsel didn't hear part of the witness testimony on another day. Trial counsel admitted that she "misunderstood certain remarks by the assistant prosecutor during the trial" and a "critical remark during the State's closing argument."

Russo expressed concerns regarding trial counsel's performance during the State's cross-examination of defendant. He elaborated that it was "prejudicial" for trial counsel to sit next to defendant during the State's cross-examination and that it was "certainly far from best practice."

Russo subsequently removed trial counsel from her next scheduled trial because the trial judge told him that trial counsel "should be second chair in a case," and he "knew this was . . . a very serious matter and that [he] had to act." He also noted "serious concerns" when trial counsel cross-examined N.R., "because she was very, very close to [N.R.], giving the impression that she was trying to maybe intimidate [N.R.] when she was just merely trying to hear the

4

critical testimony." After trial counsel was removed from her next trial, she obtained hearing aids, after learning she had "measurable moderate hearing loss."

Russo also testified regarding his notes that referenced conversations with the vicinage's Criminal Division Presiding Judge and the Assignment Judge regarding trial counsel's hearing problems. He related that he had conversations with OPD's Human Resources staff person and an Assistant Public Defender regarding the Americans with Disabilities Act and accommodations for attorneys with "significant hearing issues."

Trial counsel testified that she worked at the OPD for thirty-one years and completed about forty-seven trials in her career. She specialized in sexual assault crimes in the "latter half" of her tenure at OPD; six to eight of these cases involved minor victims. Regarding her hearing issues, trial counsel noted that she "had discussions . . . with [the trial judge]" because the judge was "concerned." She also stated they "had a hearing on the record where [the judge] aired that issue with [defendant] and asked him if he wanted to continue with [her trial] representation[,] [a]nd he did." Trial counsel explained that she was "was confident in [her] ability to represent [defendant] adequately at trial, comfortably at trial" because if she had "trouble hearing something [she] would

A-2464-23

ask for a repeat, [she] would try to stand close enough to the witnesses to hear what was being said, and the issue was out there." Thus, trial counsel maintained that she "was not profoundly deaf by any means."

Trial counsel also stated that the judge and Russo approved of her being "physically close to witnesses" and asking "for repetitions or clarification" if she was unable to hear testimony. She told Russo that she was "confident with [her] ability to conduct a trial without any significant problems resulting from hearing" and "that if [she] needed to request repetitions of testimony or read-back or standing closer to witness testifying . . . [she] would not hesitate to do that." Russo, according to her, did not express any reservations. Regarding her cross-examination of N.R., she explained that she was by the railing, about four feet away from the witness box. She did not recall her position during the State's cross-examination of defendant but admitted she "may have moved out in front of counsel['s] table into the well to be a little bit closer." Defendant "expressed no objection" to her positioning and did not want her to be relieved from representing him. She maintained that although the "courtroom acoustics . . . [were] challenging," her hearing issues did not impact her representation of defendant, and if it had, she would have raised it in the motion for new trial she filed before procuring hearing aids.

In her certification to the PCR court, trial counsel stated she received a hearing loss diagnosis in December 2011, ten months before defendant's trial commenced in October 2012, and before the trial, she had "drainage tubes installed in 2012" to address fluid accumulation. She noted that after the trial, she and her doctor agreed "that the drainage tubes hadn't worked and . . . [she] needed hearing aids." Trial counsel denied telling defendant, when she visited him in jail after the verdict, that she should not have handled his case due to her hearing issues.

Defendant's sentencing and appellate counsel testified that trial counsel informed him that "she had missed some things during the trial," "her judgment was also clouded because she had . . . developed an attachment to defendant," and she "had some issues with hearing." On direct appeal, he raised the following issues: (1) trial counsel's failure to object to leading questions by the State, (2) the State argued in summation that defendant was lying because of an inconsistency in testimony that contradicted the record, and (3) trial counsel's errors in objecting to the CSAAS testimony. Although he noted that trial counsel experienced hearing issues, he didn't raise it as a legal argument because it was outside of the record and stated in a footnote in his appellate merits brief that an ineffective assistance of counsel claim is better suited for a PCR petition.

7

He testified that when he interviewed trial counsel for the PCR petition, she indicated it was possible she misheard statements, but she took remedial measures such as standing close to witnesses and asking for read backs of testimony.

Finally, defendant testified as to his perception of trial counsel's hearing issues. Defendant stated: "She was having problems hearing through the whole trial, you know, with the witnesses. She [would] ask repeatedly to . . . repeat the questions or answers they g[a]ve through the whole trial." He also recounted how she visited him after trial, showed him the hearing aids she procured, and "cried and . . . told [him] that it was a mistake for her to . . . you know, to continue . . . representing [him]." Defendant stated that if he had known trial counsel had moderate hearing loss, he "absolutely [would] not" want her. Defendant did not recall having a pretrial conversation on the record with the trial judge and trial counsel regarding counsel's hearing issues.

After reserving decision, the PCR judge issued a thirty-three-page written opinion and order denying defendant relief. Thereafter, the self-represented defendant unsuccessfully moved for reconsideration. The PCR judge, citing D'Atria v. D'Artia, 242 N.J. Super. 392, 401 (1990), denied the motion, stating that defendant "failed to show that the [c]ourt acted in an arbitrary, capricious,

or unreasonable manner in denying his [PCR petition], failed to show that the [c]ourt's decision was based upon a palpably incorrect or irrational basis . . . [or that it] did not consider or failed to appreciate the significance of competent, probable evidence."

## II.

We review a PCR judge's legal conclusions de novo. State v. Harris, 181 N.J. 391, 419 (2004). Under the two-pronged test to determine a trial counsel's ineffectiveness, the defendant must demonstrate that: (1) "counsel's performance was deficient," that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); accord State v. Fritz, 105 N.J. 42, 58 (1987).

PCR "is neither a substitute for direct appeal, R. 3:22-3, nor an opportunity to relitigate cases already decided on the merits, R. 3:22-5." State v. Preciose, 129 N.J. 451, 459 (1992). Per Rule 3:22-4(a)(1) to (3), any issue that was not raised on direct appeal cannot be a basis for PCR unless it could not have reasonably been raised on direct appeal, denying relief would result in

fundamental injustice, or would violate the Constitution of the United States or the State of New Jersey.

When a judge conducts an evidentiary hearing, we must uphold the judge's factual findings, "'so long as those findings are supported by sufficient credible evidence in the record.'" State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). Additionally, we defer to a judge's findings that are "substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy." Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15) (internal quotation marks omitted). We thus owe particular deference to the judge's credibility determinations. See State v. Locurto, 157 N.J. 463, 474 (1999).

## III.

Before us, defendant contends:

> AS [DEFENDANT] HAD ESTABLISHED A CASE OF PREJUDICIAL INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, HE IS ENTITLED TO A NEW TRIAL.
>
> > (1) Trial counsel's hearing disability compromised her ability to provide effective representation.

10

(2) Trial counsel's failure to move to suppress CSAAS testimony on the grounds it is scientifically unreliable was prejudicial.

(3) Trial counsel's ineffective cross-examination of [N.R.] was prejudicial.

(4) Trial counsel was ineffective for failing to ask for a timely curative jury instruction.

(5) Trial counsel's error allowed the jury to hear a misleading and erroneous jury instruction.

(6) The cumulative errors of trial counsel's several errors denied defendant his right to effective legal representation.

We address these contentions in turn.

Trial Counsel's Hearing Issues

Defendant argues that trial counsel's hearing issues resulted in ineffective assistance. The PCR judge rejected the argument. The judge acknowledged that, although defendant provided "dozens of examples" of trial counsel's hearing issues, he failed to explain how this established a prima facie case of ineffective assistance. The judge recognized that trial counsel's "significant hearing challenges" resulted in "[N.R.] . . . repeat[ing] graphic and powerful accusations" and possibly caused trial counsel to "miss[] key portions of what was being said during trial." Nonetheless, he reasoned that neither the trial judge nor her supervisor took "remedial action," to replace trial counsel "[n]o co-

11

counsel was added, and no mistrial was declared." Additionally, the PCR judge noted that "any given courtroom is notoriously known for bad acoustics" and that trial counsel's repetition of certain questions "could be interpreted as strategic to ensure that jurors heard the question." As such, the judge found that trial counsel's hearing issues did not constitute ineffective assistance.

We agree with the PCR judge's determination. There was no question that the courtroom has bad acoustics, and the trial judge approved trial counsel's remedial solutions of being "physically close to witnesses" and asking for "repetitions or clarification" if she did not hear something. Notwithstanding her hearing issues, trial counsel vigorously objected to improper testimony and advocated for defendant's interests—she objected to testimony about the state of mind of N.R.'s eleven-year-old brother A.R. as improper bolstering and eliciting sympathy from the jury, objected to and requested a mistrial due to A.R.'s double hearsay testimony, and moved to dismiss the indictment at the close of the State's case. The PCR judge noted that the Supreme Court noted that trial counsel conducted a "skillful" cross-examination of N.R. See J.R., 227 N.J. at 419-20. And we agree with the PCR judge's reasoning that trial counsel's requests to have witnesses repeat testimony "does not prove that she was ineffective." In sum, defendant does not show "how [these] errors [were] so

serious that counsel was not functioning as the 'counsel' guaranteed [to] . . . defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 694.

Even if trial counsel's performance was deficient under prong one of Strickland, defendant does not show how trial counsel's hearing issues prejudiced his trial outcome as required by prong two. Defendant's argument that trial counsel's actions in asking N.R. to repeat graphic statements is insufficient to "cast sufficient doubt on a verdict to require reversal," State v. Jenewicz, 193 N.J. 440, 473 (2008), and "render the underlying trial unfair," State v. Wakefield, 190 N.J. 397, 537-38 (2007). Given that N.R.'s testimony about being sexually assaulted by defendant, which was corroborated by numerous family members, there is no showing that if trial counsel did not have hearing problems, the jury verdict would have been any different.

We likewise reject defendant's argument that trial counsel was aware of and failed to disclose her hearing issues to defendant. Although trial counsel's certification admitted that she received a hearing loss diagnosis prior to the trial, her doctor inserted drainage tubes in her ears to resolve the issue. It was not until after the trial that she was diagnosed with "measurable moderate hearing loss," causing her to use a hearing aid. Moreover, defendant who observed

13

counsel's performance throughout the trial did not object to her representation at any time. Defendant's argument is therefore without merit.

Suppression of CSAAS testimony

Defendant argues that trial counsel was ineffective in not seeking suppression of the CSAAS testimony. The PCR judge noted this argument was already addressed by the rulings of our Supreme Court and this court that N.R.'s hearsay statements about the sexual assaults to the state's CSAAS expert, Dr. Taska, were admissible under N.J.R.E. 803(c)(4) and thus could not be reargued in a PCR petition per Rule 3:22-5. The PCR judge also rejected defendant's argument that our Supreme Court's holding that CSAAS testimony may no longer be admitted at criminal trials should apply retroactively.

We agree with the PCR judge that CSAAS testimony argument is barred under Rule 3:22-5 as it was already considered on direct appeal. See J.R. II, 227 N.J. at 400. Even if we reconsider the argument, it has no merit. As our Supreme Court reasoned, although the CSAAS testimony exceeded the bounds of proper expert testimony, this error was harmless given that N.R. "not only described the incidents of abuse, but explained her failure to report her allegations to anyone but her brothers," and she, as did her family members and defendant, confirmed "the critical question of defendant's access to [her] on

multiple occasions with no one else present." Ibid. Therefore, besides the argument's procedural shortcomings, trial counsel's failure to object to the CSAAS testimony did not prejudice defendant's trial outcome.

Cross-Examination of N.R.

Defendant argues that her trial counsel failed to properly cross-examine N.R. as to her inconsistent statements about when she told her brothers about defendant's abuse. The PCR judge dismissed the argument, reasoning that the timing of N.R.'s disclosure did not impact her credibility and thus did not prejudice the defense.

We conclude defendant's argument is belied by the record. At trial, she stated that she confided in her brothers in the back of defendant's car, but in her interview with law enforcement she stated that she confided in her brothers after the first incident of assault during a game of hide-and-seek. During N.R.'s cross-examination, trial counsel emphasized that she initially incorrectly told the Hudson County Prosecutor Office's detective that she disclosed defendant's sexual abuse after the first time she was assaulted by defendant and cast doubt on N.R.'s credibility by stressing her lack of emotion during her testimony, her inability to remember the exact dates that she was assaulted, inconsistencies as to how frequently the abuse occurred, and the reasons for her delayed disclosure.

15

Indeed, our Supreme Court characterized trial counsel's cross-examination as "skillful" in "challeng[ing]" N.R.'s credibility.  J.R., 227 N.J. at 420.

Jury Instructions

Defendant's remaining arguments—trial counsel was ineffective in:  not requesting a curative instruction to disregard A.R.'s hearsay testimony; not objecting to the trial court's erroneous jury instruction regarding testimony about N.R.'s physical examination; and not cross-examining N.R. regarding her inconsistent statements when she disclosed the abuse to her brothers—are barred by Rule 3:22-4 because they should have been raised on direct appeal and barring them would not result in a fundamental injustice or be contrary to constitutional law.

Notwithstanding the rule's procedural bar, the claims lack merit. Defendant's argument that trial counsel was ineffective in failing to request an immediate curative jury instruction regarding A.R.'s double hearsay statement that his brother told him that N.R. disclosed that defendant sexually assaulted her is unpersuasive.  The record shows that trial counsel immediately sought a mistrial because A.R.'s hearsay statements would deny defendant's right to a fair trial.  Moreover, defendant does not show how this alleged error prejudiced his trial outcome.  Trial counsel's strategy did not challenge the fact that N.R.

disclosed the abuse to her brothers; rather the strategy was to attack her credibility by highlighting—through cross-examination and in summation—her inconsistent statements about <u>when</u> she disclosed the abuse to them. A singular curative instruction would not have altered the jury's guilty verdict because various witnesses corroborated details regarding N.R.'s account of abuse and defendant's testimony confirmed that he had private access to N.R. on various occasions to sexually assault her.

Defendant also contends that his trial counsel was ineffective in failing to object to the trial court's erroneous response to the jury's question that the State's medical expert Paulett Diah, M.D. did not testify regarding N.R.'s scar tissue, instead of correctly stating that Dr. Diah testified that N.R.'s hymen was intact.[2] We reject this argument. Defendant is correct that the trial counsel erred in failing to object to the instruction because the testimony was relevant in ascertaining the physical evidence of sexual assault. However, because the testimony was by no means the only evidence against defendant, there is no showing that without the error, a reasonable probability exists that the jury would have reached a different verdict. In fact, as our Court concluded, the jury

---

[2] During deliberations, the jury asked the judge: "What did the medical doctor who examined [N.R.] . . . say about her hymen?" And in parenthesis it says, "Was there scar tissue?"

assessed N.R.'s credibility—her detailed disclosures, delay in telling her family about the abuse, and whether defendant was with N.R. alone to sexually assault her—and defendant's credibility, his adamant denial of the assaults and the opportunity to commit them. See J.R., 227 N.J. at 400. Thus, the PCR judge properly denied defendant's ineffective assistance of counsel claim.

Cumulative Errors

Defendant contends he was deprived of a fair trial because of the cumulative effect of the trial counsel's errors in providing effective assistance. We disagree.

When multiple errors are alleged, "the predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair." Wakefield, 190 N.J. at 538. However, even where a defendant alleges multiple errors, "the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair." State v. Weaver, 219 N.J. 131, 155 (2014).

The PCR judge rejected defendant's cumulative errors contention, finding all of defendant's ineffective assistance arguments unpersuasive. Because we also conclude that none of defendant's arguments have merit, we likewise

18

conclude there is no basis to reverse defendant's conviction due to cumulative errors.

To the extent we have not addressed any of defendant's arguments, it is because we have determined they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division